A99A0572. STOKES v. THE STATE.
(518 SE2d 447)

SMITH, Judge.

After the trial court denied his motion to suppress, Timothy Tyrone Stokes was convicted in a bench trial of trafficking in cocaine. His motion for new trial was denied, and he appeals, asserting that his motion to suppress should have been granted. Because the officers who approached Stokes did not go beyond the permissible scope of inquiry, we affirm.

> When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citation and punctuation omitted.) *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994). In this case, a Richmond County sheriff's investigator was the only witness at the suppression hearing, and no new information regarding Stokes's arrest was adduced at trial.

Construed to support the trial court's decision, the evidence shows that on June 27, 1996, at approximately 3:52 p.m., the officer and his partner were "just riding around known drug areas" and pulled into the parking lot of a convenience store and gas station. The

property was placarded with "no loitering" signs, and the property owner had asked the officers to try to keep people from loitering there. In the parking lot, the officers saw a burgundy Pontiac Grand Am with Stokes in the driver's seat and another man standing next to the driver's door, leaning on the car. The men were not near the gas pumps or the store entrance, and "[a]s far as I could tell they were loitering. They were just on the parking lot not doing anything but talking."

The officers approached the car, identified themselves, and asked the men what they were doing. According to the officer who testified, the men "both kind of just looked at each other" and Stokes said that he was there to use the telephone. The car was parked approximately 20 feet from the telephones, and there were no other cars or people in the parking lot between it and the telephones. The officer then asked the man standing beside the car if he knew the man sitting in the car; he did not know Stokes's name. Stokes also did not know the other man's name. The officer "found that very odd, especially the way I'd first observed them. They seemed to be real intimate with each other."

At that point, the officer asked Stokes if he would step out of the vehicle, and Stokes "said he didn't mind." In response to questioning from the trial court, the officer reiterated that he did not order Stokes out. He also testified that he asked Stokes to step out "for my own safety and my partner['s] safety. He could have denied that and that would have been the end of it."

When Stokes stepped out of the car, the officer saw a plastic bag containing what appeared to be crack cocaine and powdered cocaine beside the seat and a scale sticking out from beneath the seat. Stokes was arrested, and a field test performed on the contents of the bag was positive for the presence of cocaine.

After hearing the evidence, the trial court denied Stokes's motion to suppress. On appeal, Stokes argues that he was unlawfully "seized" by the officer before the drugs were discovered. We disagree.

At least three types of police-citizen encounters exist: verbal communications involving no coercion or detention; brief "stops" or "seizures" that require reasonable suspicion; and "arrests," which can only be supported by probable cause. *Verhoeff v. State*, 184 Ga. App. 501, 503 (362 SE2d 85) (1987).

A first-tier encounter never intrudes upon any constitutionally protected interest, since the purpose of the Fourth Amendment is not to eliminate all contact between police and citizens, but simply to prevent arbitrary and oppressive police interference with the privacy and personal security of individual citizens. *Verhoeff*, supra at 503. On the other hand, a second-tier encounter may violate the Fourth Amendment if the officer briefly "stops" or "seizes" a citizen without

an articulable suspicion. Articulable suspicion requires a particularized and objective basis for suspecting that a citizen is involved in criminal activity. See *Painter v. State*, 227 Ga. App. 875, 877 (490 SE2d 544) (1997). Moreover, a "seizure" within the meaning of the Fourth Amendment only occurs when, in view of all the circumstances surrounding the incident, a reasonable person believes that he is not free to leave. *Moran v. State*, 170 Ga. App. 837, 840 (1) (318 SE2d 716) (1984).

Stokes's actions and behavior, in combination with his presence in a known drug area and inability to name the person with whom he was in "real intimate" conversation a few moments before, might be sufficient to produce a reasonable, articulable suspicion of criminal conduct. See *Thompson v. State*, 230 Ga. App. 131, 132 (495 SE2d 607) (1998) (appellant did not know name of supposed uncle he was visiting). But we need not reach this issue, because the officer's actions were within the permissible scope of a first-tier approach and inquiry to a citizen.

It is well established that an officer's approach to a stopped vehicle and inquiry into the situation is not a "stop" or "seizure" but rather "clearly falls within the realm of the first type of police-citizen encounter." *McClain v. State*, 226 Ga. App. 714, 716 (1) (487 SE2d 471) (1997). In addition, it is clear that merely requesting consent for a search is not a seizure and does not require articulable suspicion.

> Even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search — as long as the police do not convey a message that compliance with their requests is required.

(Citations and punctuation omitted.) *State v. Westmoreland*, 204 Ga. App. 312 (1) (418 SE2d 822) (1992). Asking an individual to step outside for safety reasons is a permissible action that does not rise to the level of a seizure. *Pickens v. State*, 225 Ga. App. 792, 793 (1) (a) (484 SE2d 731) (1997). This court also has recognized a distinction between an officer's "appropriately deferential" request for cooperation and a demand rising to the level of a stop. *Owens v. State*, 192 Ga. App. 671, 673 (1) (385 SE2d 761) (1989).

*Barnes v. State*, 228 Ga. App. 44 (491 SE2d 116) (1997), relied on by Stokes, is inapposite. Barnes was standing alone in a "high stop and cop" area when officers approached him because they observed something in his hand. Barnes was uncooperative and "began walking away" when approached. The officers stopped him, Barnes "started tussling" with the officers, and they searched him, finding

cocaine. This court held that the trial court erred in denying Barnes's motion to suppress, noting that he "was free to walk away and refuse to answer or ignore the officers' request to speak unless the police had a particularized and objective basis for suspecting that he was involved in criminal activity." Id. at 46. This court concluded that the police failed to articulate any such basis. Id. Similarly, in *State v. Banks*, 223 Ga. App. 838, 840 (479 SE2d 168) (1996) (physical precedent only), a police officer was not satisfied with Banks's responses to questioning, demanded that he take his hand out of his pocket, and conducted a pat-down search. We held that this "stop" or "seizure" required an articulable suspicion, which the officer did not provide.

In contrast, the evidence presented here shows a first-tier encounter, neither requiring reasonable suspicion nor invoking Fourth Amendment protection for Stokes. The record reflects that the officers approached Stokes's already parked car to inquire what was going on, and Stokes and his companion readily responded. Nothing in the record shows that the officer threatened or coerced Stokes, or that he restrained Stokes's movements in any way. While an order or instruction to roll down a car window or open a car door may constitute physical force or a show of authority sufficient to constitute a "seizure," see generally *State v. Smith*, 137 Ga. App. 101, 102 (223 SE2d 30) (1975), Stokes's car window was already open, and he willingly spoke with the officer. The uncontradicted evidence shows that the officer requested rather than ordered that Stokes exit the car, and that Stokes "said he didn't mind" and did so. The request and Stokes's response were part of a conversational and "casual encounter," and the record demonstrates "that defendant had no objective reason to believe that he was not free to end the conversation . . . and proceed on his way." *Verhoeff*, supra at 504. For this reason, Stokes's claim that he was "seized" when the officer approached the car and made a simple inquiry followed by a request is not supported by the evidence in the record, and the trial court's ruling denying the motion to suppress was not clearly erroneous.

*Judgment affirmed. Pope, P. J., and Eldridge, J., concur.*

DECIDED MAY 25, 1999.

*Fleming, Blanchard, Jackson & Durham, Richard A. Ingram, Jr.*, for appellant.

*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.