## A02A1597. ENGLISH v. THE STATE.
### (572 SE2d 86)

SMITH, Presiding Judge.

Louis Jasper English was convicted by a jury of misdemeanor obstruction of a law enforcement officer. OCGA § 16-10-24 (a). Following the denial of his motion for new trial, he appeals, enumerating as error the trial court's refusal to grant his motion for directed verdict. We find no error, and we affirm.

Construed in favor of the verdict, evidence was presented that Officer Kevin Isenhour was on patrol on a dead-end street in an area of Buford known for high drug activity. After reaching the dead end, Isenhour turned his vehicle around in the driveway of Everett English ("Everett"), the brother of Louis English. Isenhour had been in the area "many times," and he and Everett were acquainted with one another. After Isenhour pulled into Everett's driveway, Everett approached Isenhour's vehicle, stuck his head inside the car, shook Isenhour's hand, and thanked him "for coming around to patrol the area and told me that I was welcome there anytime."

Isenhour turned his vehicle around and noticed a car parked "up past [Everett's] house a little bit, just at the far corner, like it would be leaving from the area." The car "was pulled off to the side of the

road" and had two people inside. Isenhour sent a radio message that he was investigating "a suspicious female." He parked behind the car and was walking toward it when Everett called out to him, "Those people are okay, don't worry about it." Isenhour replied, "Well, let me find out who they are." He explained at trial that he "wanted to see what they looked like, who they were, because if I saw them again and knew that they were supposed to be in the area and they weren't some of our drug users or sellers, wave at them the next time I see them and that would be it." Everett told Isenhour that he needed "to leave, this is private property." Isenhour told him that he was "just going to check on them" and "would be out of here in a few minutes." Although Isenhour's familiarity with and respect for Everett changed his own suspicion of illegal activity in the car, Isenhour felt he needed to meet the occupants, because "[t]hat was our job, to get to know the people in the drug areas."

Isenhour never reached the vehicle, however. While Everett was telling Isenhour that the occupants of the car were "okay," English quickly approached Isenhour, yelling and cursing at Isenhour, telling him "to get off the property, it was his property, that I had no business there." English was "mean" and very loud, and he refused to do anything Isenhour told him to do. Isenhour backed away from English and threatened to use pepper spray if English did not retreat. English refused to do so and continued to advance, and Isenhour engaged the pepper spray. English knocked the canister from Isenhour's hand and struck Isenhour in the mouth. Isenhour and English struggled as Isenhour tried to arrest him. Everett pulled Isenhour away from English, and a woman grabbed Isenhour when he tried a second time to arrest English. For one to two minutes, Everett and the woman held Isenhour's arms and refused to let him transmit on his radio or reach for his baton. He finally pushed away, pulled his gun, told them to "back away," and got down behind his car. Several bystanders had gathered at the scene by the time other officers arrived. After a struggle between English and the officers, English was finally subdued. He, Everett, and the woman who helped detain Isenhour were arrested. During the struggle, the bystanders threw "bricks and wood, anything that they could find laying on the ground" at the officers.

The jury found English guilty of misdemeanor obstruction of a law enforcement officer. On appeal, he argues that his motion for directed verdict should have been granted because the evidence did not show that Isenhour had permission to be on private property or that exigent circumstances warranted his presence there. He also argues that Isenhour was not in the lawful discharge of his duties because he lacked reasonable suspicion of criminal activity with respect to the parked vehicle.

We find no merit in English's contentions. It was within the exclusive province of the jury to assess witness credibility, resolve conflicts in the evidence, and reach a determination as to the facts. *Hodnett v. State*, 269 Ga. 115, 116 (1) (498 SE2d 737) (1998). Although Everett and English both made self-serving statements that Isenhour was on "private property," Isenhour testified that he was not on private property but was on a clearly marked, paved road. A rational trier of fact was authorized under this evidence to conclude that Isenhour was not on private property.

In addition, Isenhour was not required to have reasonable, articulable suspicion of criminal activity in order to approach the parked vehicle and talk with the occupants. Isenhour explained his reasons for wanting to identify and talk with the occupants of the car as being part of his duties on the Anti-Crime Team Unit assigned to the area, and he was in uniform and was patrolling the area on the night of the incident. More importantly, "[i]t is well established that an officer's approach to a stopped vehicle and inquiry into the situation is not a 'stop' or 'seizure' " requiring an articulable suspicion that a person is involved in criminal activity. (Citation omitted.) *Stokes v. State*, 238 Ga. App. 230, 232 (518 SE2d 447) (1999). "Even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual." (Citation omitted.) Id. Isenhour clearly was authorized to try and talk with the people in the car. Unlike the facts involved in *Holt v. State*, 227 Ga. App. 46 (487 SE2d 629) (1997), on which English relies, no detention was involved in this case, and no Fourth Amendment concerns against an unlawful seizure were implicated. A rational trier of facts was authorized to conclude that Isenhour was acting within the lawful discharge of his duties when his encounter with English occurred. The trial court therefore did not err in denying English's motion for directed verdict.

*Judgment affirmed. Eldridge and Ellington, JJ., concur.*

DECIDED OCTOBER 7, 2002.

*Derek M. Wright*, for appellant.

*Daniel J. Porter, District Attorney, Wesley C. Ross, Assistant District Attorney*, for appellee.