A03A2423. THE STATE v. JOURDAN.
(589 SE2d 682)

BLACKBURN, Presiding Judge.

The State appeals the trial court's grant of David Allen Jourdan's motion to suppress methamphetamine discovered inside a cigarette box during what the State contends was a lawful frisk for weapons. For the reasons set forth below, we affirm.

---

In reviewing a trial court's ruling on a motion to suppress, we must adopt the trial court's findings of fact unless those findings are not supported by any evidence and are clearly erroneous. *Padron v. State*.[1] So considered, the evidence shows that on December 15, 2001, while checking a hunting area in Webster County for illegal bait, Department of Natural Resources (DNR) officers discovered a suspicious blue packet on the ground near a campsite. State testing confirmed that the packet contained methamphetamine. A week later, DNR Ranger Steve Robinson and Sergeant Butch Potter returned to the same campsite and hunting area "to follow up on the meth that we'd found and that bait that we'd found." While searching for hunters, Robinson found Jourdan some 20 feet up in a deer stand. At Robinson's request, Jourdan climbed down. Robinson asked Jourdan if he had any weapons on his person and if he would consent to a search for weapons. Jourdan consented. After checking Jourdan's pockets and finding no weapons, Robinson asked Jourdan to remove his coveralls and he did so. While patting him down, Robinson felt a cigarette box in Jourdan's left shirt pocket. Robinson could see that it was a pack of Camel cigarettes.

After testifying three times that he and not Jourdan had removed the box from Jourdan's pocket, Robinson amended his testimony to say that Jourdan had done so. Robinson then testified that at his request, Jourdan removed the box from his pocket and handed it over to him. Robinson opened the box and found what he suspected was contraband. Robinson testified that he then asked Jourdan "if he was going to tell me what was in the baggie," and Jourdan had responded, "[i]t's speed, sir." After Jourdan failed certain field sobriety tests, Robinson arrested him. State testing purportedly confirmed the substance in the cigarette box as being methamphetamine.

The State brought a three-count accusation against Jourdan for possession of methamphetamine, hunting under the influence of drugs, and hunting deer without wearing fluorescent orange material. Jourdan filed a motion to suppress all evidence obtained "as a result of an illegal search, seizure, stop, or arrest" including any post-arrest statements and test results. He asserted that his federal and state constitutional rights had been violated.

At the hearing on the motion to suppress, the State argued that the search of the cigarette package was lawful and consensual. Robinson, the State's sole witness and the only person to testify, claimed that Jourdan gave permission for the search. Robinson testified that he opened the cigarette box because he knew that such

---

[1] *Padron v. State*, 254 Ga. App. 265 (562 SE2d 244) (2002).

boxes could contain concealed weapons. When asked, "[w]hat about that box of cigarettes made you think that that was a weapon?" Robinson responded, "[n]othing, sir, but they can put weapons in them." When further asked, "[w]as there anything about this particular box that made you think that there [were] weapons in the box?" Robinson answered, "[i]n the box, no, sir." Robinson admitted that he had asked Jourdan only for permission to search for weapons and that he did not disclose the fact that rangers had earlier found a "blue bag of crystal meth."

In granting the motion to suppress, the trial court entered several findings. The trial court found that the rangers were not required to obtain a search warrant before returning to the campsite where the methamphetamine had previously been discovered. The court also found that, as a conservation ranger lawfully executing his duties, "Ranger Robinson could lawfully approach any person found at the location and ask for identification." The court further determined that "Ranger Robinson's search of Defendant's outer clothes was properly justified under *Terry v. Ohio*.[2]"

As to the search of the interior clothes, the trial court stated that such a search "would normally be invalid under the provisions of *Terry*, supra," but that Jourdan had freely consented to such a search. The trial court found, however, that Robinson's search of the contents of the cigarette box where the drugs were discovered was "improper and invalid." The court noted:

> Ranger Robinson testified at the motion to suppress hearing that there was nothing about the cigarette box that made him think the box contained a weapon. This Court can only assume therefore that because Ranger Robinson did not believe the box contained a weapon, his search of the box was for the purpose of obtaining evidence.

The trial court found that the search exceeded its lawful scope and that the evidence seized was "tainted by the illegal search." On that basis, the trial court granted Jourdan's motion to suppress.

1. The State contends that the trial court erred in granting the motion to suppress because the officer's search of the cigarette box was done with Jourdan's consent. The State claims that Jourdan never revoked or withdrew his consent and that the search of the box was done "by virtue of that consent."

"The State has the burden of proving the validity of a consensual search and must show the consent is given 'voluntarily.'" *Clemow v.*

---

[2] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

*State*.[3] "[C]onsent which is the product of coercion or deceit on the part of the police is invalid." *Code v. State*.[4] Consent is not voluntary when it is the result of duress or coercion, express or implied. Id.

> The voluntariness of consent is determined by the totality of the circumstances; no single factor controls. The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness — what would the typical reasonable person have understood by the exchange between the officer and the suspect. The appropriate inquiry is whether a reasonable person would feel free to decline the officers' request to search or otherwise terminate the encounter.

(Citations and punctuation omitted.) *Corley v. State*.[5] Mere acquiescence to the authority asserted by a police officer cannot substitute for free consent. *State v. Westmoreland*.[6] And, "[w]e are required to scrutinize closely an alleged consent to search." *Corley*, supra at 306. While Jourdan apparently acquiesced to the officer's directive to give him the cigarette box, we cannot say that single factor demonstrated free consent or showed that Jourdan felt free to refuse to do so. See id.

The State's reliance upon *Morris v. State*[7] is misplaced because in that case, unlike here, the deputy asked the defendant whether he would mind if the deputy examined his box of matches and the defendant responded, " 'no, go ahead.' " Id. at 101 (1). Inside the match box were three clear, plastic bags containing a white powdery substance, later determined to be cocaine. Here, the record contains no such testimony by the officer. After considering the totality of the circumstances, we find that the State failed to meet its burden of showing that Jourdan voluntarily consented to the search of the contents of his cigarette box.

2. The State contends that the trial court erred in granting the motion to suppress because the officer was conducting a valid search for weapons. Relying upon Robinson's testimony that a box of cigarettes "can have switchblades, razor knives, and stuff like that," the State claims that "[c]learly, the ranger testified that his purpose for opening the box was to check for the possibility of a concealed weapon and not for obtaining evidence." Citing *Elzey v. State*,[8] the State also

---

[3] *Clemow v. State*, 196 Ga. App. 533 (1) (396 SE2d 302) (1990).
[4] *Code v. State*, 234 Ga. 90, 93 (III) (214 SE2d 873) (1975).
[5] *Corley v. State*, 236 Ga. App. 302, 306 (1) (b) (512 SE2d 41) (1999).
[6] *State v. Westmoreland*, 204 Ga. App. 312, 313 (2) (418 SE2d 822) (1992).
[7] *Morris v. State*, 239 Ga. App. 100, 101 (520 SE2d 485) (1999).
[8] *Elzey v. State*, 239 Ga. App. 47, 49 (519 SE2d 751) (1999).

argues that "[h]unting in Georgia is a highly regulated activity, governed by a complex set of rules designed for a variety of purposes, including safety, wild game management, and revenue generation." The State asserts that the privilege of hunting and the peculiar nature of that activity result in a diminished expectation of privacy on the part of hunters. See id. at 50. While it is true that hunting is a highly regulated activity subject to licensing and permitting,[9] it is not true that constitutional safeguards for hunters are completely abrogated. The Fourth Amendment protects an individual's right to be secure against unreasonable searches and seizures. The "touchstone of the Fourth Amendment is reasonableness." (Punctuation omitted.) *Ohio v. Robinette*.[10] "Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances." (Punctuation omitted.) *State v. Sims*.[11]

Because the sole justification for a pat-down search or frisk is the protection of the police officer, an extended search exceeding the purpose of an otherwise lawful search is constitutionally unreasonable. *Wyatt v. State*.[12] A frisk involves a pat-down of a person's outer clothing and is not a full search.

> Unlike a full search, a frisk is conducted solely for the purpose of insuring the safety of the officer and of others nearby, not to procure evidence for use at a subsequent trial. It must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer. In other words, an extended search, exceeding the purpose of the frisk, would be constitutionally unreasonable, and any evidence thereby obtained must be excluded.

*Corley*, supra at 304-305 (1) (a). After completing a frisk of a person's outer clothing, an officer may

> intrude beneath the surface only if he comes upon something which feels like a weapon. An officer who exceeds a pat-down without first discovering an object which feels reasonably like a knife, gun, or club must be able to point to specific and articulable facts which reasonably support a

---

[9] OCGA § 27-2-28 (a) requires any person required to carry a license, permit, or stamp issued pursuant to the Game and Fish Code to allow the inspection of such hunting license, permit, or stamp by a conservation ranger and to produce his driver's license or other equally reliable identification, when requested to do so by a DNR officer.

[10] *Ohio v. Robinette*, 519 U. S. 33, 39 (117 SC 417, 136 LE2d 347) (1996).

[11] *State v. Sims*, 248 Ga. App. 277, 278 (546 SE2d 47) (2001).

[12] *Wyatt v. State*, 151 Ga. App. 207, 210 (1) (259 SE2d 199) (1979).

suspicion that the particular suspect is armed with an atypical weapon which would feel like the object felt during the pat-down.

(Citations and punctuation omitted.) *Brown v. State*.[13] Here, the record contains no testimony that Robinson reasonably believed that this particular individual was armed and trying to conceal an atypical weapon. Compare *Pace v. State*[14] (officer authorized to reach into pocket of defendant where defendant repeatedly tried to reach into his pocket and officer reasonably believed defendant was reaching for a weapon). In these circumstances, we cannot say that the trial court clearly erred in finding that the search of Jourdan's person exceeded its lawful scope. See *Sprinkles v. State*.[15]

*Judgment affirmed. Ellington and Phipps, JJ., concur.*

DECIDED NOVEMBER 13, 2003.

Cecilia M. Cooper, District Attorney, Daniel P. Bibler, Assistant District Attorney, for appellant.
*Craig S. Mathis*, for appellee.

[13] *Brown v. State*, 181 Ga. App. 768, 771 (1) (a) (353 SE2d 572) (1987).
[14] *Pace v. State*, 219 Ga. App. 583, 586 (466 SE2d 254) (1995).
[15] *Sprinkles v. State*, 227 Ga. App. 112 (1) (488 SE2d 492) (1997).