## A07A0334. FOSTER v. THE STATE.
(646 SE2d 302)

PHIPPS, Judge.

Brian Foster was charged with possession of cocaine, possession of less than one ounce of marijuana, and possession of cocaine inside the guard lines established at a jail. Foster moved to suppress the contraband on grounds that it was seized incident to an unlawful search. After denying Foster's motion to suppress, the trial court convicted him of the first two charges at a stipulated bench trial. Foster appeals. Because an application of the law to the facts found by the trial court mandates the conclusion that the search was unlawful, we reverse.

At the hearing on the motion to suppress, Cobb County Police Officer Robert Dorsey testified that he was patrolling a high-drug crime area near Six Flags Drive when he observed Foster sitting in a darkened, parked car some distance from the entrance to a hotel. Because Dorsey's suspicions were aroused, he parked his patrol car and approached Foster's car. By the time Dorsey got to Foster's car, he noticed that Foster had exited it. Dorsey testified that he "just walked up to him and said hey, how are you doing sir. Can I talk to you for a minute. And he said I could." According to Dorsey, Foster then began to appear very nervous and kept putting his hands into his pockets despite Dorsey's requests that he not do so.

Dorsey further testified that he asked Foster whether he was in possession of any drugs or weapons; that Foster said no; that, without threatening Foster in any way, he then asked him "for my safety, is it okay if I search your pockets"; and that Foster consented. Dorsey testified that while he was checking Foster's pockets, he immediately found "a suspected blunt or cigar of suspected marijuana" in his right front jacket pocket. When asked what made him think it was suspected marijuana, Dorsey responded, "I looked at it and then I smelled it. And I broke it open."

After arresting Foster, Dorsey continued searching him and found a small "glassine-type" baggie with marijuana in his right front jeans pocket and then another baggie with crack cocaine in his outer left jacket pocket. Another officer searched Foster's car and located more marijuana and crack cocaine residue in a garbage bag on the front floorboard. After Foster was taken to jail, he was found to be in possession of baggies with suspected crack cocaine residue.

Material parts of Dorsey's testimony were disputed by Foster and another witness. Foster testified that after Dorsey asked to talk to him, he told him that he was going to search him out of concern for officer safety without asking for consent. Foster's version of events was supported by Yvette Hines, an eyewitness with whom he also had a close personal relationship.

When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[1]

Nonetheless, "[t]he burden of proving a search was lawful is on the state."[2] The state thus has the burden of proving the validity of a consensual search.[3] Moreover, "[w]e are required to scrutinize closely an alleged consent to search."[4] And the trial court's application of the law to facts is subject to de novo review.[5]

The United States Supreme Court has identified three levels of encounters between an individual and police. The first involves the mere accosting by an officer usually requesting name and identification. There is no threshold requirement and indeed the individual may refuse to answer or ignore the request and go on his way if he chooses, for this does not amount to any type of restraint and is not encompassed by the Fourth Amendment. The second is the "*Terry* type" stop involving temporary restraint, a brief "seizure" which must be supported by articulable suspicion. The third is an actual or de facto arrest which requires probable cause and involves restraint of one's liberty.[6]

Accordingly, the first-tier encounter, unlike the other two, is consensual in nature.

---

[1] *Stokes v. State*, 238 Ga. App. 230 (518 SE2d 447) (1999) (citation omitted).

[2] *Barnes v. State*, 228 Ga. App. 44 (491 SE2d 116) (1997) (citation omitted).

[3] *State v. Jourdan*, 264 Ga. App. 118, 120 (1) (589 SE2d 682) (2003).

[4] Id. at 121 (citation and punctuation omitted).

[5] See *Tutu v. State*, 252 Ga. App. 12, 13 (555 SE2d 241) (2001).

[6] *Barnes*, supra at 45-46 (citations and punctuation omitted).

The voluntariness of consent is determined by the totality of the circumstances; no single factor controls. The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness — what would the typical reasonable person have understood by the exchange between the officer and the suspect. The appropriate inquiry is whether a reasonable person would feel free to decline the officers' request to search or otherwise terminate the encounter.[7]

"Even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search — as long as the police do not convey a message that compliance with their requests is required."[8] "This court also has recognized a distinction between an officer's 'appropriately deferential' request for cooperation and a demand rising to the level of a stop."[9] Adjudged by these principles, Dorsey's testimony authorized the court to find that his encounter with Foster was consensual and that Foster's consent to the search was freely given.[10]

Dorsey testified, however, that the consent he obtained from Foster was to search his pockets for weapons out of concern for officer safety. In searching for weapons, "a two-step process must ordinarily be followed: (1) The officer must pat down first, and (2) then intrude beneath the surface only if he comes upon something which feels like a weapon."[11]

Unlike a full search, a frisk is conducted solely for the purpose of insuring the safety of the officer and of others nearby, not to procure evidence for use at a subsequent trial.

---

[7] *Jourdan*, supra at 121 (citation omitted).

[8] *Stokes*, supra at 232 (citation omitted).

[9] Id. (citation omitted).

[10] See *Stokes*, supra (officer approached parked car and made a request, as opposed to an instruction or order, that driver step out of the vehicle); *State v. Westmoreland*, 204 Ga. App. 312 (1) (418 SE2d 822) (1992) (merely approaching an individual and requesting consent for a search does not constitute a seizure); compare *Barnes*, supra (officer testified that he asked defendant to stop after defendant began to walk away); *Archer v. State*, 217 Ga. App. 257, 260 (2) (456 SE2d 754) (1995) (officer testified that he ordered defendant to put his hands on the hood of the police car so that he could conduct a pat-down search for weapons); *Westmoreland*, supra at 313-314 (2) (defendant consented to search only because officer said, in response to question posed by defendant, that he did not need a warrant to search him).

[11] *Edgell v. State*, 253 Ga. App. 775, 777 (560 SE2d 532) (2002) (citations and punctuation omitted).

It must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.[12]

After completing a frisk of a person's outer clothing, an officer may "intrude beneath the surface only if he comes upon something which feels like a weapon. An officer who exceeds a pat-down without first discovering an object which feels reasonably like a knife, gun, or club must be able to point to specific and articulable facts which reasonably support a suspicion that the particular suspect is armed with an atypical weapon which would feel like the object felt during the pat-down."[13]

But "[u]nder [the plain feel doctrine], if, during a lawful pat-down search, an officer feels an object whose contours or mass makes it immediately identifiable as contraband, that officer can seize the item."[14]

Adjudged by these principles, Foster's consent to Dorsey's search of his pockets for weapons cannot be interpreted as having extended so far as to have authorized Dorsey to remove the contents of Foster's pockets unless he came upon something that felt like a weapon or an object immediately identifiable as contraband. According to Dorsey, he felt neither. The trial court thus erred in finding Dorsey's seizure of the contraband lawful and in denying Foster's motion to suppress.

*Judgment reversed. Johnson, P. J., and Mikell, J., concur.*

DECIDED MAY 2, 2007 —
RECONSIDERATION DENIED MAY 18, 2007 — 

*Kenneth R. Croy*, for appellant.
*Patrick H. Head, District Attorney, Dana J. Norman, Nicholas Salter, Assistant District Attorneys*, for appellee.

---

[12] *Jourdan*, supra at 122 (2) (citation omitted).
[13] Id. at 122-123 (citation omitted).
[14] *Patman v. State*, 244 Ga. App. 833, 834-835 (537 SE2d 118) (2000) (footnote and emphasis omitted).