## A09A1539. WALKER v. THE STATE.

(683 SE2d 867)

JOHNSON, Presiding Judge.

A jury found Kevin Walker guilty of possession of cocaine and two counts of misdemeanor obstruction of an officer. He appeals from the convictions entered on the verdict, challenging the trial court's denial of his motion to suppress evidence. Walker asserts that law enforcement officers: (1) unlawfully detained him when they prevented him from leaving the scene; (2) frisked him without having a reasonable suspicion that he was armed or posed a safety threat; and (3) conducted a search of his person that exceeded the scope of his consent. For the reasons set forth below, we reverse.

On a motion to suppress, the burden of proving the search was lawful is on the state.[1] An appellate court reviewing a trial court's order on a motion to suppress must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[2] Where, as here, the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo review.[3]

The record shows that on March 27, 2007, four officers with the City of Covington Police Department were patrolling Ridge Avenue at about 6:15 p.m, while it was still daylight. They drove an unmarked car, but were wearing vests with "POLICE" printed on them and other clothing articles indicating they were police officers. Although police had received ongoing complaints that drug transactions took place on that street, they had not received any complaints of drug activity on this particular day.

The police officers saw four males standing in the street. The men looked at the police car as it approached and, as the car began to come to a stop, the men turned and started to walk out of the street and into a yard. The men had not gotten far when one of the officers said, "hey, hold on guys, come here, come here." Three of the men, including Walker, stopped. An officer went to get the one man who walked away.

The officer told the other men to come back and stand in front of him. The men came back and, at the officer's request, sat on the pavement. The officer testified that Walker appeared to be very nervous, as he could see Walker's heart beating through his shirt, and he was looking around, shaking and sweating. The officers

---

[1] *Teal v. State*, 291 Ga. App. 488, 489 (662 SE2d 268) (2008).

[2] Id. at 488.

[3] Id.

gathered the men together and patted them down "for officer's safety because of what we were dealing with." The officer who frisked Walker stated that the pat-down was based on his "experience with dealing with narcotics, and you know, the type people that sell narcotics normally have weapons." The officer did not find anything during the pat-down search. The officer then conducted what he called a "field interview," asking Walker questions such as "what's your name, what are you doing over here, [and] where do you live."

Next, the officer

> asked Mr. Walker could I search him. And he said, you searched me. I had already patted him down a few minutes ago for a weapon. And I asked him, did he mind if I search him, and he said, you searched me [a] while ago. And I said, no, I just patted you down. I touched the outside of your pockets to see if you had weapons. I said, and I explained to him, *a search is where I go inside your pockets. I said, do you have a problem with me doing that.* He's, like, no, go ahead. So I searched him.

(Emphasis supplied.) The officer then

> searched every pocket on his person. . . . And then, after I had searched everything, I went back to his waistline, his belt line right where you button and zip your britches and pulled that. I just put my hand against his stomach, pulled his pants out, and I saw a [small cloth] bag sitting in his crotch area.

The officer testified that the purpose of this search was to check for narcotics. The officer "wanted to go and do an intrusive [search], inside of his pockets and inside, you know, wherever he could hide contraband, and his crotch being one of them."

The officer concluded that, based on his experience, the cloth bag contained narcotics. He asked another officer to handcuff Walker. While Walker was being handcuffed, he attempted to pull away from the officers. The officers tackled Walker and told him to put his hands behind his back. Walker did not, and stood back up. Officers knocked him to the ground again and then shot him with a taser gun. After handcuffing Walker, an officer removed the cloth bag from Walker's crotch. The bag contained cocaine.

1. On appeal, Walker asserts that the stop was constitutionally improper. We agree.

The United States Supreme Court has sculpted out three tiers of

encounters between the police and citizens: (1) communication between police and citizens involving no coercion or detention, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause.[4]

In the first tier, police officers may approach a citizen, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave.[5] The second tier occurs when the officer actually conducts a brief investigative *Terry* stop of the citizen.[6] In this level, a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity.[7] Whenever a police officer accosts an individual and restrains his freedom to walk away, he has seized that person.[8]

It is undisputed that the stop here, in which Walker was told to "hold on . . . come here," and sit on the pavement, and was then asked questions pursuant to a "field investigation," was a second-tier, investigative detention that required the officer to have a particularized and objective basis for suspecting that Walker was or was about to be involved in criminal activity.[9] However, the officer articulated no particularized and objective basis for suspecting that Walker was so involved. The officer stated that he suspected Walker of criminal activity because Walker was standing in the roadway in an area in which drug transactions were known to take place, and he appeared to be nervous upon the officers' approach.

But there were no complaints that day of drug activity or of Walker's involvement in such activity; the officer did not know Walker or know if he had been involved in drug activity in the past; the officers did not see Walker or the other men "flagging people down," as one officer testified that persons involved in roadway drug transactions typically do; the encounter was during daylight hours on a public street; the police were in an unmarked vehicle; Walker did not flee, but had only taken a couple of steps away, then stopped and came back when called by police; and Walker's apparent nervousness in the presence of a group of police officers, even in a known drug area, does not provide a basis for the reasonable articulable

---

[4] *State v. Dukes*, 279 Ga. App. 247, 248 (630 SE2d 847) (2006).

[5] Id. at 248-249.

[6] Id. at 249.

[7] Id.

[8] *State v. Sapp*, 214 Ga. App. 428, 431 (3) (448 SE2d 3) (1994).

[9] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968); see *State v. Banks*, 223 Ga. App. 838 (479 SE2d 168) (1996).

suspicion required by *Terry*.[10] At best, the officer's stated reasons raised a subjective, unparticularized suspicion or hunch. They did not constitute an objective basis for suspecting Walker of involvement in drug activity and justify a second-tier investigatory detention.[11] The detention here was unreasonable.[12] And, we note, Walker's attempt to avoid the illegal detention cannot support an obstruction charge.[13]

2. The purportedly consensual search of Walker's person was also unlawful. First, because Walker's consent to search his person was the product of an illegal detention, it was not valid.[14]

Second, even if we agreed with the state that Walker's consent was not the product of an illegal detention, the search exceeded the scope of Walker's consent. The state has the burden of proving the validity of a consensual search, and we are required to scrutinize closely an alleged consent to search.[15] The intrusiveness of a consensual search — including the type, duration, and physical zone of the intrusion — is limited by the permission granted, and only that which is reasonably understood from the consent may be undertaken.[16] Consent to search does not include, for instance, consent to removal of clothing or consent to a body cavity search; and consent to search pockets for weapons does not include consent to search pockets for drugs.[17] When Walker finally consented to a search, it was only after the officer told him that "a search is where I go inside your pockets," and asked if Walker had "a problem with [him] doing that." Walker's indication that he did not "have a problem" with the officer searching his pockets cannot be interpreted as having extended so far as to have authorized the officer to, after searching all of his pockets and finding nothing, push Walker's abdomen, pull his waistband forward, and look down inside Walker's pants at his crotch area for narcotics. In fact, the officer admitted on cross-examination that he did not ask Walker if he could "pull [Walker's

---

[10] See *Holmes v. State*, 252 Ga. App. 286, 289 (556 SE2d 189) (2001).

[11] See id. at 288-289 (*Terry* stop improper where defendant walked away, in a known drug area, and seemed nervous); *Barnes v. State*, 228 Ga. App. 44, 46 (491 SE2d 116) (1997) (*Terry* stop improper where defendant in known drug area tried to walk away and "acted suspiciously"). See also *Peters v. State*, 242 Ga. App. 816, 817 (1) (531 SE2d 386) (2000) (detention unlawful where defendant was walking hurriedly in known drug area and appeared nervous). Compare *State v. McKinney*, 265 Ga. App. 322, 324 (593 SE2d 865) (2004) (*Terry* stop lawful where defendant was in dark remote area of private property with "no loitering" sign posted, and defendant's responses to officer's questions were suspicious).

[12] See *Banks*, supra at 842.

[13] See *Black v. State*, 281 Ga. App. 40, 48 (1) (635 SE2d 568) (2006).

[14] See *State v. Gibbons*, 248 Ga. App. 859, 864 (2) (547 SE2d 679) (2001).

[15] See *Foster v. State*, 285 Ga. App. 441, 442 (646 SE2d 302) (2007).

[16] *Springsteen v. State*, 206 Ga. App. 150, 152 (424 SE2d 832) (1992).

[17] See *Foster*, supra at 443-444; *Springsteen*, supra.

pants] open so [he] could see down his pants to his private area." The search inside Walker's pants exceeded the parameters of Walker's consent to a search of his pockets.[18] The trial court thus erred in finding the seizure of the drugs lawful and in denying Walker's motion to suppress.[19]

3. In light of our ruling above, it is unnecessary to address Walker's contention that the pat-down search for weapons was also unlawful.

*Judgment reversed. Ellington and Mikell, JJ., concur.*

DECIDED AUGUST 20, 2009.

*Salvatore L. Schiappa III*, for appellant.
*W. Kendall Wynne, Jr., District Attorney, Clint C. Malcolm, Assistant District Attorney*, for appellee.

---

[18] See *Foster*, supra; *Amato v. State*, 193 Ga. App. 459, 460 (1) (388 SE2d 54) (1989).
[19] See *Foster*, supra.
[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).