**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**May 20, 2014**

# In the Court of Appeals of Georgia

A14A0422. THE STATE v. LEJEUNE.

DILLARD, Judge.

The State appeals the trial court's grant of Jodin LeJeune's motion to suppress evidence discovered as a result of a traffic stop. On appeal, the State contends that the trial court erred in granting the motion on the grounds that (1) the police officer lacked reasonable, articulable suspicion to *follow* LeJeune's vehicle, and the stop of the vehicle was pretextual; and (2) the officer violated department policy when he followed the vehicle. We agree that the trial court erred in granting the motion to suppress and therefore reverse.

At the outset, we note that at a hearing on a motion to suppress, "the trial judge sits as the trier of fact."[1] And when this Court reviews the grant or denial of a motion

---

[1] *State v. Hamby*, 317 Ga. App. 480, 481 (731 SE2d 374) (2012).

to suppress, we must construe the evidence "most favorably to uphold the findings and judgment of the trial court, and that court's findings as to disputed facts and credibility must be adopted unless clearly erroneous."[2] However, we owe "no deference to the trial court's conclusions of law" and are instead "free to apply anew the legal principles to the facts."[3]

So viewed, the record reflects that at approximately 2:00 a.m. on February 9, 2011, a Gwinnett County police officer was patrolling around the Mall of Georgia area in Buford when he observed LeJeune's vehicle. LeJeune pulled out of the parking lot of a restaurant that, according to the officer, had a reputation in the department for being a frequent source of drivers who were under the influence of alcohol. Accordingly, the officer admitted that he, like other officers, paid particular attention to that specific intersection of the patrol area beginning around 1:30 a.m. The officer also admitted that "other officers" had, in the past, sat in a parking lot across from the restaurant to watch patrons leave and that his lieutenant advised officers against doing this after the restaurant complained of this practice. But the

---

[2] *Id.*

[3] *Martin v. State*, 316 Ga. App. 220, 220 (729 SE2d 437) (2012) (punctuation omitted).

officer testified that he was actually driving in the area on the night in question when he spotted LeJeune.

It is wholly undisputed that when the officer decided to follow LeJeune's vehicle he had committed no traffic offenses and that the officer had no reasonable, articulable suspicion that he was committing or about to commit a crime. The officer followed LeJeune for approximately one-and-a-half to two miles before observing him cross the center line and weave within his lane. At that point, the officer initiated a traffic stop for failure to maintain lane.[4]

Thereafter, LeJeune was charged by accusation with driving under the influence of alcohol,[5] possession of marijuana,[6] failure to maintain lane,[7] driving under the influence of drugs,[8] and driving under the influence of drugs and alcohol.[9] He moved to suppress the evidence in October 2012 and, after a hearing, the trial

---

[4] What occurred next does not appear in the record, as LeJeune only challenged the officer's stop of the vehicle.

[5] *See* OCGA § 40-6-391 (a) (1).

[6] *See* OCGA § 16-13-2 (b).

[7] *See* OCGA § 40-6-48 (1).

[8] *See* OCGA § 40-6-391 (a) (2).

[9] *See* OCGA § 40-6-391 (a) (4).

3

court denied the motion and a subsequent motion for reconsideration. Then, just prior to trial, the trial court reversed course and granted LeJeune's motion for the reasons set forth *supra*. This appeal by the State follows.

1. First, the State argues that the trial court erred in granting LeJeune's motion on the grounds that the officer lacked reasonable, articulable suspicion to *follow* LeJeune, and that the stop was pretextual. We agree.

Despite LeJeune's arguments to the contrary, there is no support for his position that an officer must have reasonable, articulable suspicion that a crime has been or is about to be committed prior to even following an individual. To be sure, LeJeune is correct that, "[when] no circumstances at all appear which might give rise to an articulable suspicion (less than probable cause, but greater than mere caprice) that the law has been violated, the act of following *and* detaining a vehicle and its occupants must be judged as an impermissible intrusion on the rights of the citizen."[10] Nevertheless, our Supreme Court has emphasized that implicit in such cases is that "each case must turn on its own independent circumstances bearing on the issue of

---

[10] *Brooks v. State*, 129 Ga. App. 109, 111 (198 SE2d 892) (1973) (emphasis supplied).

4

reasonableness *of the seizure.*"[11] In other words, as is clear from the holding in those cases themselves, the focus is on the ultimate *stop* of the individual, *not* on the "following" that led to the seizure.[12]

We made this same observation in *State v. Wright*,[13] in which this Court previously addressed and rejected the very argument LeJeune makes in this appeal.[14] There, we held that, consistent with the State's ability to practice preventative therapy by means of reasonable road checks,[15] "[a] most effective preventive therapy prescription is that of the traffic police merely following citizens who are driving

[11] *Brisbane v. State*, 233 Ga. 339, 342 (211 SE2d 294) (1974) (emphasis supplied).

[12] *See, e.g.*, *Brooks*, 129 Ga. App. at 111 ("The *stop* effected by turning on the police light and driving up beside the car *to halt it* was coercive action which infringed upon the defendant's Fourth Amendment rights." (emphasis supplied)).

[13] 221 Ga. App. 202, 206 (4) (470 SE2d 916) (1996) (noting that the cases cited by the defendant "were focused on the intrusion caused *by the ultimate detention* of the citizen and [were] not authority supporting the [defendant's] contention" (emphasis supplied)).

[14] *See id.* (noting that defendant argued that "a police officer is required to have an articulable suspicion before he can commence pursuit or even the mere following of a citizen").

[15] *Id.* at 207-08 (4) (quoting *Brisbane*, 233 Ga. at 343, for proposition that "the state can practice preventative therapy by reasonable road checks to ascertain whether man and machine meet the legislative determination of fitness" (punctuation omitted)).

5

motor vehicles."[16] And the act of following citizens in motor vehicles "is not unreasonable within the meaning of the Fourth Amendment when conducted" within parameters established by the Supreme Court of the United States.[17] Accordingly, unless police conduct would, under the totality of the circumstances, "result in an unreasonable *seizure*, no Fourth Amendment violation warranting evidence suppression occurs."[18]

Here, the officer's act of following LeJeune was not a seizure. As in *Wright*, the only submission to officer authority occurred when LeJeune stopped his vehicle in response to the officer's flashing lights, and the officer only initiated his lights—and the stop itself—*after* LeJeune failed to maintain his lane,[19] at which point

---

[16] *Id.* at 208 (4).

[17] *Id.* (citing *California v. Hodari*, 499 U.S. 621 (111 SCt 1547, 113 LE2d 690) (1991), and *Michigan v. Chesternut*, 486 U.S. 567 (108 SCt 1975, 100 LE2d 565) (1988)).

[18] *Id.* at 207 (4) (emphasis supplied).

[19] *See id.* ("[A]ppellee never *submitted* to the show of police authority until the patrol units both activated their flasher lights; at that point, . . . at least one or more of the officers had an articulable suspicion that appellee had committed various traffic offenses.").

the officer had probable cause justifying the stop.[20] Accordingly, we agree with the State that the trial court erred in granting the motion to suppress on grounds that the officer's stop was pretextual.[21]

2. Next, the State argues that the trial court erred in granting the motion to suppress on the ground that the officer's decision to follow LeJeune was a violation of department policy. Again, we agree.

The heart of LeJeune's argument in this regard is that the officer "profiled" him on the basis of his having patronized a restaurant that was known to department

---

[20] *See State v. Reddy*, 236 Ga. App. 106, 108 (1) (b) (511 SE2d 530) (1999) ("The temporary detention of a motorist based upon probable cause that he violated a traffic law does not implicate the Fourth Amendment's prohibition against unreasonable searches and seizures, even if a reasonable officer would not have made the stop absent an ulterior motive." (punctuation omitted)). To the extent that the trial court found that LeJeune's failure to maintain lane was caused by the officer's act of accelerating behind him, this finding was clearly erroneous because there was no evidence to support this conclusion, as any indication of same was solely made in an unanswered question by defense counsel. *See, e.g.*, *Bradley v. State*, 322 Ga. App. 541, 544 (1) (b) (745 SE2d 763) (2013) ("[C]ounsel's questions and arguments are not evidence."). And, nevertheless, this in no way undermines the officer's observation of a traffic violation.

[21] *See Reddy*, 236 Ga. App. at 108 (1) (b) ("[I]f the arresting officer witnessed the driver breaking even a relatively minor traffic law, a motion to suppress under the Fourth Amendment arguing that the stop was pretextual must fail." (punctuation omitted)); *see also Whren v. United States*, 517 U.S. 806, 811 (II) (A) (116 SCt 1769, 135 LE2d 89) (1996).

officers as being a frequent source of drivers under the influence of alcohol. LeJeune argues that this was a violation of the department's policy prohibiting "bias-based profiling." However, the very portion of the department policy that prohibits "bias-based profiling" acknowledges that "[p]rofiling, the generation of a set of common traits specific to a pattern of crime, can be a useful tool to officers in carrying out their duties" and specifies that "the selection of individuals based solely on a trait common to a group for enforcement action" is what is disallowed. Accordingly, it appears that this policy is directed at the prevention of targeting individuals on the basis of race, religion, or other such traits, and LeJeune makes no such allegation in the case *sub judice*.

Additionally, the policy of the department is "to investigate suspicious persons and circumstances, and to *actively enforce traffic laws.*"[22] And citizens will only be *stopped or detained* when "there exists reasonable suspicion to believe that they have committed, are committing, or are about to commit a violation of the law."[23] Our resolution of the issues in Division 1 forecloses any contention that the officer

---

[22] Emphasis supplied.

[23] Emphasis supplied.

8

*stopped or detained* LeJeune without reasonable suspicion[24] and, accordingly, there was no violation of any department policy with an attendant Fourth Amendment violation to warrant application of the exclusionary rule.[25]

For all the foregoing reasons, we reverse the trial court's grant of LeJeune's motion to suppress.

*Judgment reversed. Doyle, P. J., and Miller, J., concur.*

---

[24] *Cf. Padron v. State*, 254 Ga. App. 265, 269 (1) (562 SE2d 244) (2002) ("Although the deputy admittedly had a 'hunch' that appears likely to have been based on ethnic profiling—a Spanish-speaking driver, originally from Cuba, and traveling southbound from Atlanta to Florida, no evidence showed the existence of a particularized and objective basis for suspecting criminal wrongdoing."); *Edwards v. State*, 219 Ga. App. 239, 244 (3) (464 SE2d 851) (1995) (rejecting defendant's argument that stop was "based on a drug courier profile" when vehicle was stopped because it displayed no tag).

[25] *See Betancourt v. State*, 322 Ga. App. 201, 208 (3) (b) (744 SE2d 419) (2013) (noting that the text of the Fourth Amendment makes no mention of "suppressing evidence obtained in violation of same," the exclusionary rule is "a judicially created remedy," and the rule applies only when "its remedial objectives are thought most efficaciously served" (punctuation omitted)); *see also State v. Thackston*, 289 Ga. 412, 413 (1) (716 SE2d 517) (2011) ("The exclusionary rule is a judicially created remedy adopted to protect Fourth Amendment rights by deterring illegal searches and seizures. . . . Because the rule is not constitutionally mandated and because of its broad deterrent purpose, it consistently has been applied only 'where its remedial objectives are thought most efficaciously served.'" (citations omitted)).