**FIRST DIVISION**
**DOYLE, C. J.,**
**ANDREWS, P. J., and RAY, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 9, 2016**

# In the Court of Appeals of Georgia

A16A0512. THE STATE v. MARTIN.

ANDREWS, Presiding Judge.

Following his arrest and subsequent accusation for possession of marijuana (OCGA § 16-13-30 (j) (1)) and possession of a drug related object (OCGA § 16-13-32.2 (a)), Charles Martin III filed a pretrial motion to suppress evidence obtained following pre-arrest questioning by a sheriff's deputy. After a hearing on Martin's motion, the State Court of Fayette County entered an order granting the motion to suppress. The State appeals, arguing that the deputy's questioning of Martin, and Martin's disclosure of incriminating evidence, did not elevate their encounter from a first tier police-citizen encounter to a second tier encounter requiring articulable suspicion. See OCGA § 5-7-1 (a) (4). We agree and reverse.

As a threshold matter, our review of a trial court's order concerning a motion to suppress evidence is governed by three fundamental principles:

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

*Stokes v. State*, 238 Ga. App. 230 (518 SE2d 447) (1999). See also *Miller v. State*, 288 Ga. 286 (1) (702 SE2d 888) (2010); *Tate v. State*, 264 Ga. 53 (440 SE2d 646) (1994); *Myers v. State*, 333 Ga. App. 755, 756 (777 SE2d 44) (2015). These principles apply equally to trial court decisions both in favor of and against defendants. See *Miller*, 288 Ga. at 286-287. However, in our review of orders concerning motions to suppress, a trial court's "application of the law to undisputed facts is subject to de novo review." *State v. Walker*, 295 Ga. 888, 889, n. 1 (764 SE2d 804) (2014). See also *State v. LeJeune*, 327 Ga. App. 327 (759 SE2d 53) (2014) ("we

owe 'no deference to the trial court's conclusions of law' and are instead 'free to apply anew the legal principles to the facts.').

Generally, the relevant facts as found by the trial court are not in dispute. On September 10, 2013, a Fayette County Sheriff's deputy received a dispatch concerning loud music coming from a suspicious vehicle at 235 Windsor Drive in Fayetteville. The dispatch included a description of the vehicle as a "dark, black in color, passenger vehicle, possibly an Acura" and a tag number. While en route to 235 Windsor Drive, the deputy spotted a "dark in color, black, Acura" parked in the driveway of 155 Windsor Drive. The tag number matched the number he received from dispatch. Two white males were standing next to the vehicle. The deputy stopped and asked the men if they had been parked further down the road and whether they had been listening to loud music. Martin, the driver, denied playing loud music but did state that he had been talking on his cellular telephone. The deputy then asked what the two were doing in the driveway. Martin replied that he had stopped to deliver a school book to a friend and that the two were talking.

Next, the deputy asked Martin "if anything was in the vehicle that [the deputy] need[ed] to know about or be concerned about." Martin responded, "yes." When the deputy asked what was in the car, Martin stated that there was "some marijuana and

a pipe." The deputy asked Martin to retrieve the items, and Martin produced a small bag containing a green leafy substance and a glass pipe and placed them on the roof of the vehicle. At that point, the deputy asked Martin to stand behind the vehicle and placed Martin under arrest for possession of marijuana and possession of a drug related object. The trial court concluded that

> [o]nce [the deputy] began *asking* about the contents of the vehicle and whether there was anything he should know about the contents, the encounter became second tier. [Martin] did not volunteer that he had marijuana and a pipe in his vehicle, but *responded to a direct question* from [the deputy].

(Emphasis supplied). As a result, the trial court granted Martin's motion to suppress.

As we have noted previously,

> [a]t least three types of police-citizen encounters exist: verbal communications involving no coercion or detention; brief "stops" or "seizures" that require reasonable suspicion; and "arrests," which can only be supported by probable cause. A first-tier encounter never intrudes upon any constitutionally protected interest, since the purpose of the Fourth Amendment is not to eliminate all contact between police and citizens, but simply to prevent arbitrary and oppressive police interference with the privacy and personal security of individual citizens. On the other hand, a second-tier encounter may violate the Fourth Amendment if the officer briefly "stops" or "seizes" a citizen

4

without an articulable suspicion. Articulable suspicion requires a particularized and objective basis for suspecting that a citizen is involved in criminal activity.

*Stokes*, 238 Ga. App. at 231-232. See also *Foster v. State*, 285 Ga. App. 441, 442 (646 SE2d 302) (2007); *State v. Westmoreland*, 204 Ga. App. 312 (1) (418 SE2d 822) (1992). "It is well established that an officer's approach of a stopped vehicle and inquiry as to what is going on does not constitute a stop or seizure and clearly falls within the realm of the first type of police-citizen encounter." *Whitmore v. State*, 289 Ga. App. 107, 109 (657 SE2d 1) (2008); *Chapman v. State*, 279 Ga. App. 200, 202 (1) (630 SE2d 810) (2006). See also *Walker*, 295 Ga. at 890-891. In this case, the sheriff's deputy approached Martin and another man standing next to a parked vehicle that matched the description of a suspicious vehicle in the neighborhood. The deputy approached Martin and asked if they had been playing loud music and what the two were doing. There is no evidence that the deputy "initially either restrained [Martin's] movement by means of physical force or show of authority, or that the deputy prevented [Martin's] vehicle from driving away during this initial encounter." *Chapman*, 279 Ga. App. at 202 (1). As a result, the trial court correctly found that the deputy's initial questioning constituted a first tier encounter.

5

However, contrary to the trial court's analysis, the deputy's question concerning whether "anything was in the vehicle that [the deputy] need[ed] to know about or be concerned about" did not escalate the encounter to the second tier. Of particular relevance, "[e]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and *request consent to search* — as long as the police do not convey a message that compliance with their requests is required." (Emphasis supplied). *Foster*, 285 Ga. App. at 443; *Stokes*, 238 Ga. App. at 232. Here, the trial court found that "[o]nce [the deputy] began asking about the contents of the vehicle and whether there was anything he should know about the contents, the encounter became second tier."

In this case, the deputy's inquiry, which Martin was free to decline,[1] does not even rise to the level of requesting consent to search - which itself would have been permitted during a first tier encounter. See *Foster*, 285 Ga. App. at 443; *Stokes*, 238 Ga. App. at 232; *Westmoreland*, 204 Ga. App. at 312 (1) (merely approaching

---

[1] Although the trial court made no specific finding of fact on Martin's ability to terminate the encounter, the deputy testified that Martin was "free to leave had [he] so chosen, and no other evidence indicated otherwise." See *Whitmore*, 289 Ga. App. at 109.

individual to request consent to search does not constitute a seizure). Rather than terminate the encounter, as was his right, Martin offered an honest response to the deputy's question. The trial court's attempt to distinguish between Martin "volunteer[ing] that he had marijuana and a pipe in his vehicle" and Martin "respond[ing] to a direct question" the deputy was lawfully permitted to ask during a first tier encounter is a distinction without a meaningful difference. See *Whitmore*, 289 Ga. App. at 109 (encounter remained first tier when officer "*requested* that [the drivers] move their vehicles to a parking lot . . . so as to avoid impeding traffic and to ensure greater safety") (emphasis supplied); *Stokes*, 238 Ga. App. at 232 ("*Asking* an individual to step outside for safety reasons is a permissible action that does not rise to the level of a seizure.") (emphasis supplied). In short, if the deputy could ask for consent to search during a first tier encounter, then he could ask the more innocuous question of whether the vehicle contained anything about which he should be concerned. Accordingly, we conclude that the deputy's inquiry concerning the contents of what had been reported as a suspicious vehicle was permissible during a first tier police-citizen encounter. See *Whitmore*, 289 Ga. App. at 109; *Foster*, 285 Ga. App. at 443; *Stokes*, 238 Ga. App. at 232; *Westmoreland*, 204 Ga. App. at 312 (1). Because the trial court concluded that the deputy's question elevated the nature

7

of his encounter with Martin to a second tier encounter requiring articulable suspicion, the trial court erred. As a result, we reverse.

*Judgment reversed. Doyle, C. J., and Ray, J. concur.*