A10A2311. SANTOS v. THE STATE.
(703 SE2d 140)

ELLINGTON, Judge.

Following a bench trial, the Superior Court of DeKalb County found Jorge Santos guilty beyond a reasonable doubt of obstructing or hindering a law enforcement officer in the lawful discharge of his official duties, OCGA § 16-10-24 (a), for attempting to elbow the officer in the face, and battery, OCGA § 16-5-23.1, for wrestling with the officer and causing bruises to his shin and knee. On appeal, Santos contends that the allegedly criminal acts occurred during an illegal detention and that the trial court erred in denying his motion in limine to exclude all evidence that flowed from that illegal detention, specifically, the officer's testimony about Santos' conduct after that illegal detention began. In addition, Santos contends that he was justified in "resist[ing being illegally detained] with the minimal force that he used," and, therefore, that the evidence was insufficient to convict him of obstruction or battery. For the reasons explained below, we affirm.

1. Because the trial court sits as the trier of fact when ruling on a motion to suppress or a motion in limine,

> its findings based upon conflicting evidence are analogous to a jury verdict and should not be disturbed by a reviewing court if there is any evidence to support them. When we review a trial court's decision on such motions to exclude evidence, we construe the evidence most favorably to uphold the findings and judgment, and we adopt the trial court's findings on disputed facts and credibility unless they are clearly erroneous. When the evidence is uncontroverted and no question of witness credibility is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review. With mixed questions of fact and law, the appellate court accepts the trial court's findings on disputed facts and witness credibility unless clearly erroneous, but independently applies the legal principles to the facts.

(Citations and punctuation omitted.) State v. Tousley, 271 Ga. App.

874 (611 SE2d 139) (2005).

Viewed in the light most favorable to the trial court's findings, the record shows the following facts. On April 22, 2009, a police officer was working an off-duty security job at an apartment complex where there had been a lot of drug activity as well as pedestrian robberies, homicides, and home invasions. The officer was dressed in his police uniform, and he was driving a marked patrol car. At approximately 11:00 p.m., Santos and two other men walked by the police car. The officer got out and asked if Santos lived in the complex. The three men stopped walking, and Santos answered that he did live there, but he could not give a specific address. Santos acted nervous and became fidgety with his hands. The officer told Santos, who was wearing baggy clothing, to keep his hands where the officer could see them. Santos continued to fidget with his hands, and then he put them in his jacket pockets. The officer again told Santos to keep his hands out where the officer could see them. Santos took off his jacket and threw it on the patrol car, but then he again put his hands in his pockets.

At that point the officer became concerned for his own safety. The officer testified that, although Santos did not verbally threaten him or "ball[ ] up his fist at" him,

> [Santos'] hand motions made me feel threatened. . . . He continued with his actions after I told him several times [to keep his hands where I could see them]. It made me feel like my safety may be jeopardized because he would not show me his hands, he kept fidgeting with his hands, appeared to be nervous. . . . So at that point in time when he continued not to comply with[, "]sir, keep your hands out of your pocket, please,["] . . . I felt [it was] necessary to pat him down for my safety . . . [b]ecause I [did not] know what he [was] reaching for[.]

The officer told Santos to put his hands behind his head, grabbed Santos, and began to pat him down. As soon as the officer touched Santos' pocket, Santos abruptly turned and almost hit the officer in the face with his elbow. The officer then subdued Santos after a brief struggle and placed him under arrest.

As we have discussed many times,

> United States Supreme Court holdings sculpt out, at least theoretically, three tiers of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief seizures that must be

> supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause. In the first tier, police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave.

(Citation, punctuation and footnote omitted.) *Brown v. State*, 301 Ga. App. 82, 84 (686 SE2d 793) (2009). An encounter is deemed first tier if a reasonable person in the citizen's position would feel

> free to decline the officer's request to speak with [him or her] or otherwise terminate the encounter. Indeed, a citizen's ability to walk away from or otherwise avoid a police officer is the touchstone of a first-tier encounter, and even running from police during a first-tier encounter is wholly permissible.

(Citations and punctuation omitted.) *Thomas v. State*, 301 Ga. App. 198, 200-201 (1) (687 SE2d 203) (2009).

An encounter that begins as first tier may escalate into a detention that comes within the ambit of the Fourth Amendment. *State v. Taylor*, 226 Ga. App. 690, 691 (487 SE2d 454) (1997). Examples of circumstances that might indicate a second-tier detention include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating compliance with the officer's request might be compelled." (Punctuation and footnote omitted.) *Cutter v. State*, 274 Ga. App. 589, 592 (1) (617 SE2d 588) (2005). "Before [an officer] places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so." (Citation and punctuation omitted.) *Molina v. State*, 304 Ga. App. 93, 95 (695 SE2d 656) (2010). If an officer conducts a pat-down for weapons without sufficient justification, any evidence discovered is inadmissible under the exclusionary rule. *Terry v. Ohio*, 392 U. S. 1, 11-13 (88 SC 1868, 20 LE2d 889) (1968). Constitutionally adequate, reasonable grounds for a pat-down for weapons for officer or bystander safety are present when, based on particular and articulable facts, the officer actually and reasonably suspects that the individual is armed and dangerous or is otherwise a threat to personal safety. Id. at 25 (III); *Molina v. State*, 304 Ga. App. at 93.

Santos contends that in this case the trial court erred in finding that a second-tier detention was justified under the applicable

standard. In support of this argument, Santos contends that, just as a citizen in a first-tier encounter is free to decline an officer's request to stop and talk, a citizen is free to refuse any other request, including to keep his or her hands visible. This position is too extreme. Although a person is free to walk or run away from an officer during a first-tier encounter, a person who chooses instead to stop and talk to the officer may by menacing conduct during that first-tier encounter give rise to a reasonable suspicion that he or she poses a threat to personal safety. *Terry v. Ohio*, 392 U. S. at 25 (III).

In this case, the trial court, which had the opportunity to observe the officer as he testified and make a credibility determination, concluded that a pat-down of weapons was supported by the requisite facts. This Court does not weigh the evidence and cannot judge the credibility of witnesses. *Simpson v. State*, 263 Ga. App. 496, 500 (588 SE2d 445) (2003). We conclude that the evidence before the trial court authorized the court to find that, at the moment the consensual encounter escalated into a second-tier detention, the officer actually believed that Santos posed a threat to the officer's personal safety and that such belief was reasonable considering all of the circumstances, including Santos' repeated refusal to keep his hands away from the pockets of his baggy clothes, his nervous demeanor, the presence of his two companions, and the officer's knowledge of the pattern of violent crime in the apartment complex.[1] It follows that a second-tier *Terry* frisk did not constitute an illegal detention. *Sudduth v. State*, 288 Ga. App. 541, 542 (1) (654 SE2d 446) (2007) (An officer was justified in conducting a pat-down during a traffic stop after he observed the driver, who was searching for her driver's license, reach into a bag, cup her hand, slide her hand into the pocket of her pants, and then repeatedly refuse to remove her hand from her pocket when requested, which caused the officer to become extremely concerned for his safety.).[2] Finding no clear error, we uphold

---

[1] Cf. *Brown v. State*, 301 Ga. App. at 84-85 (A first-tier encounter escalated to a second-tier detention when the officer asked the defendant to take his hands out of his pockets, asked if he had any weapons, and, after the defendant replied "Yes," and then quickly changed his answer to "No," drew his weapon.); *Johnson v. State*, 231 Ga. App. 273 (498 SE2d 359) (1998) (physical precedent only) (A first-tier encounter escalated to a second-tier detention when the officer ordered the defendant out of the vehicle in which she was seated, repeatedly insisted that she remove her hands from her pockets, asked for her identification, and, when the defendant responded, "do I have to," seized the person of the defendant.); *State v. Banks*, 223 Ga. App. 838, 839-840 (479 SE2d 168) (1996) (physical precedent only) (A first-tier encounter escalated to a second-tier detention when the officer demanded that the defendant take his hand out of his pocket and then immediately patted him down.).

[2] Cf. *Molina v. State*, 304 Ga. App. at 93 (The trial court erred in denying the defendant's motion to suppress where, during a traffic stop, an officer patted down the driver, who consented to a search of his car, based on a general policy of frisking anyone who will be standing outside a vehicle during such a search and not based on any information specific to the driver that he might be armed or otherwise pose a threat to the officer's safety.); *State v.*

the trial court's denial of Santos' motion in limine. *Cutter v. State*, 274 Ga. App. at 592 (1).

2. Santos' argument that the evidence was insufficient to convict him of obstruction or battery depends on his argument that, when he swung his elbow toward the officer's face and wrestled with the officer, he was being illegally detained.[3] Because the evidence authorized the trial court to find that the detention was *not* illegal, however, for the reasons explained in Division 1, supra, his sufficiency argument provides no basis for reversing his convictions.

*Judgment affirmed. Andrews, P. J., and Doyle, J., concur.*

DECIDED NOVEMBER 10, 2010.

*Gerard B. Kleinrock*, for appellant.
*Gwendolyn Keyes Fleming, District Attorney, Leonora Grant, Assistant District Attorney*, for appellee.

---

*Brown*, 278 Ga. App. 457, 461-462 (629 SE2d 123) (2006) (The trial court did not err in granting the defendant's motion to suppress where the evidence authorized the trial court to find, after assessing the officer's credibility, that the officer did not actually believe that the defendant was a threat to the officer's personal safety when the officer pulled the defendant's hand out of his pocket, patted him down, and looked inside the pocket.); *State v. Holmes*, 240 Ga. App. 332, 333-334 (525 SE2d 698) (1999) (The trial court erred in denying the defendant's motion to suppress where two officers frisked the defendant, who was standing in the yard of a house to be searched pursuant to a warrant, based on a general policy to pat down everyone present when executing a search warrant and not based on any concern for officer safety.); *State v. Banks*, 223 Ga. App. at 840-842 (The trial court erred in denying the defendant's motion to suppress where the officer demanded that the defendant take his hand out of his pocket and then immediately patted him down, where there was no evidence that the officer was concerned for his safety before the pat-down.).

[3] See *Sidner v. State*, 304 Ga. App. 373, 376 (3) (696 SE2d 398) (2010) (A police officer is not discharging his or her lawful duty when the officer arrests an individual without reasonable or probable cause. Because a person has the right to resist an unlawful arrest, a person who resists an illegal arrest with no more force than is necessary for that purpose cannot be convicted of obstruction based on such resistance.).

