### A11A1104. ALVAREZ v. THE STATE.
(718 SE2d 884)

DOYLE, Judge.

Juan Alvarez, Jr., was convicted of one count of felony obstruction of an officer[1] and two counts of the lesser included offense of

---

[23] (Citation and punctuation omitted.) Id. at 261 (b).

[24] See *Ga. Dept. of Transp. v. Miller*, 300 Ga. App. 857, 865 (4) (a) (686 SE2d 455) (2009).

[1] OCGA § 16-10-24 (b).

misdemeanor obstruction of an officer.[2] Alvarez appeals following the denial of his motion for new trial, arguing that the trial court erred by admitting hearsay evidence and denying his motion for a directed verdict on that ground. He also challenges the sufficiency of the evidence and contends that the trial court's jury charge was erroneous. We affirm, for reasons that follow.

Construed in favor of the verdict,[3] the evidence shows that Sergeant Shane Presgraves was on patrol during the early morning hours of November 10, 2007, when he received a call from dispatch about a "suspicious," "bleeding" person on Baker Road in Hall County. Presgraves proceeded to the area, where he found Juan Manual Sosa walking along Baker Road. Sosa smelled of alcohol, he was bleeding from his nose and mouth, and had a small laceration above his eye. Sosa told the officer that he had been "beaten up" at his home at 3234 Baker Road. Although Sosa did not identify the man, he told Presgraves that his assailant had stated that "the police was [sic] no problem" and demonstrated that "he had a gun for the police."

Presgraves and at least four additional officers proceeded to Sosa's residence, and Presgraves and Deputy Chad Suttles knocked on the front door of the trailer. At the same time, Officer Jeremy Orme, who was armed with a shotgun loaded with bean bags, approached the right side of the trailer[4] and observed approximately 50 to 100 plastic cups and beer bottles in the yard. Orme also saw several people standing "towards the back of the trailer" and several more "[coming] out from the back of house"; at least four to six people began quickly walking toward the woods once they spotted the police.

Orme saw an outbuilding behind the trailer, and he began walking toward the building while racking his shotgun. As Orme rounded a corner of the outbuilding, he observed Alvarez standing face-first against the building. Alvarez was wearing a large, dark, camouflage jacket with a hood over his head. Orme could not see Alvarez's hands, so he immediately ordered him to display them and to turn around and walk toward Orme. After Orme repeated the commands at least nine times, Alvarez finally began walking toward the officer, but then turned around and started walking toward the trailer with his back toward Orme, still obscuring his hands.

Meanwhile, Presgraves, who had briefly spoken with a woman who answered the door, had descended from the porch and was

---

[2] OCGA § 16-10-24 (a).
[3] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).
[4] Other officers were simultaneously approaching the left side of the trailer.

proceeding to the rear of the trailer when he heard Orme repeatedly yelling at Alvarez to show his hands. Presgraves also commanded Alvarez to show his hands, and Alvarez failed to comply. Because he was concerned about his safety and the possibility that Alvarez might have a weapon, Presgraves retrieved his taser from his belt. After Alvarez swung at him with his fist, Presgraves deployed the taser, and the prongs hit Alvarez's jacket. Because the initial shot seemed to have no effect on Alvarez, Presgraves "dry stun[ned]" him by making direct contact between Alvarez and the taser prongs. Again, the taser appeared to have no effect, and Alvarez continued swinging his fists at Presgraves, punching him in the chin and knocking the taser out of the officer's hand.

Orme, Presgraves, and Suttles repeatedly ordered Alvarez to stop resisting and place his hands behind his back, but Alvarez refused. Presgraves and Suttles together attempted to get Alvarez's hands behind his back and handcuff him, but Alvarez continued to struggle, and they were unsuccessful. After advising the other two officers to move away from Alvarez, Orme told Alvarez that he was going to shoot him, and Alvarez charged directly toward him. Orme then shot Alvarez with a bean bag round. Alvarez stopped momentarily, but then he "went into a wild rage and went after Sergeant Presgraves and Deputy Suttles . . . [and it] just turned into a brawl at that point." The officers continually yelled at Alvarez and struck him in his upper arms in an attempt to temporarily incapacitate him, but he continued to resist. After Alvarez tossed Presgraves aside, Orme handed Presgraves the shotgun and joined Suttles and a third officer in trying to subdue Alvarez, who was head-butting, kicking, and punching the officers. After Alvarez managed to break free and stand, Presgraves again commanded him to "get back," Alvarez charged toward the officer, and Presgraves fired a second bean bag round into his chest, finally subduing him enough to handcuff him. As the officers walked Alvarez to a patrol car, he tried to bite, head-butt, trip, and spit on them, and one of the officers sprayed him with pepper spray. Once they placed him in the car, the officers had to restrain Alvarez's feet to stop him from kicking the door.

Alvarez was charged with felony obstruction of Orme, Presgraves, and Suttles, for a total of three counts. Before the trial began, the State advised the trial court that it had been unable to locate Sosa and that it intended to have the officers testify about Sosa's statements to them. Alvarez objected, arguing that the officers' testimony was hearsay and that its admission violated his confrontation rights under *Crawford v. Washington*.[5] The trial court initially

---

[5] 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004).

ruled that it would not allow the State "to tender [Sosa's testimony] through the officers."

At trial, Presgraves testified that he encountered Sosa, who was bleeding and emitting an odor of alcohol, had a conversation with him, and then proceeded to Sosa's residence. During Presgraves's testimony, the prosecutor asked him whether he was concerned that someone might have a gun. Defense counsel objected on the basis of hearsay, and the trial court overruled the objection. Presgraves then testified that he was at the residence "to investigate a crime" and that he wanted to see Alvarez's hands because of a specific concern regarding the possibility of a firearm. Thereafter, outside the presence of the jury, the State proffered Presgraves's testimony regarding his conversation with Sosa. After considering the proffer, the trial court ruled: "The State's witnesses cannot state to the jury what Mr. Sosa said to the witnesses. That's the extent of the [c]ourt's ruling. The State's witnesses cannot tell the jury that Mr. Sosa said this to me. And that's the extent of the ruling." Thereafter, Orme testified several times that he had a specific concern about somebody possessing a weapon at the residence; he did not testify about what any other person told him. Suttles also testified that he had "a concern that someone on the property may have a firearm and would be willing to use it against law enforcement."[6]

At the conclusion of the trial, Alvarez was found guilty of felony obstruction of Presgraves and misdemeanor obstruction of Orme and Suttles, and he was sentenced to serve 12 months. This appeal followed.

1. Alvarez argues that the trial court erred by admitting the "implicit hearsay" testimony of the police officers regarding Sosa's statements, resulting in the erroneous denial of Alvarez's subsequent motion for a directed verdict. We disagree.

The testimony to which Alvarez objects did not constitute inadmissible hearsay. "[A]n out-of-court statement is considered hearsay only if it is offered to prove the truth of what is contained therein."[7] Pursuant to OCGA § 24-3-2, "[w]hen, in a legal investigation, information, conversations, letters and replies, and similar evidence are facts to explain conduct and ascertain motives, they shall be admitted in evidence not as hearsay but as original evidence." "Although our Supreme Court has ruled that, only in rare instances will the conduct of an investigating officer need to be

---

[6] Defense counsel objected each time the officers testified that they had reason to believe that a person at the location had a gun.

[7] *Greene v. State*, 266 Ga. 439, 448 (25) (469 SE2d 129) (1996), overruled on other grounds, *Greene v. Georgia*, 519 U. S. 145 (117 SC 578, 136 LE2d 507) (1996).

explained, this is such a case."[8]

Here, the testimony at issue was offered not to prove that Sosa had been beaten up by a man who indicated that he had a weapon, but instead to establish a basis for the officers' actions. "In establishing that [Alvarez] obstructed the officers, the State was required to prove that they were acting in the lawful discharge of their official duties at the time of the obstruction."[9] Thus, the State needed the officers to testify about their encounter with Sosa and their belief that a person at his residence was armed with a gun. "Accordingly, the testimony was admissible as original evidence to explain that the officers were lawfully discharging their official duties."[10] This enumeration is without merit.[11]

2. Alvarez contends that the evidence was insufficient to support the verdict because the State failed to prove that Orme was in the lawful discharge of his official duties.

Pursuant to OCGA § 16-10-24, an essential element of proof of the offense of obstruction of an officer is that the obstruction occurred while the officer was "in the lawful discharge of his official duties." Here, the jury heard evidence that the police responded to the home to investigate a crime after speaking to a bloody, injured man and that the police had reason to suspect that someone at the scene was armed with a gun. Alvarez does not contend that the police did not have probable cause to respond to the scene. Instead, he argues that Orme did not have probable cause to enter the back yard

---

[8] (Punctuation and footnote omitted.) *Penland v. State*, 258 Ga. App. 659, 661 (3) (574 SE2d 880) (2002).

[9] Id.

[10] Id. See also *Johnson v. State*, 293 Ga. App. 32, 35 (2) (666 SE2d 452) (2008) ("patrol officer's testimony about the briefing he received before going on duty, during which he received the description of the armed robbery suspect and the stolen pickup truck used in the armed robbery . . . [was] admissible to explain the officer's reason for investigating upon spotting the pickup truck") (citations and punctuation omitted); *Graham v. State*, 269 Ga. App. 590, 594 (3) (604 SE2d 651) (2004) (officer's testimony regarding statements made to him by a witness was admissible because it "was not offered to prove the truth of the matter asserted . . . but to show the officer's rationale for [his actions]"); *Morrow v. State*, 257 Ga. App. 707, 708 (2) (572 SE2d 58) (2002) (officer's testimony about information he received from police dispatcher was admissible to explain the officer's reason for investigating the defendant).

[11] At trial, Alvarez also objected to the officers' testimony on the basis that it violated his constitutional right to confront and cross-examine Sosa. To the extent that he raises this argument on appeal, it is rejected. See *Little v. State*, 280 Ga. App. 60, 64 (2) (633 SE2d 403) (2006) ("The Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted. Any out-of-court statements alluded to by the officer at this juncture served the purpose of explaining how certain events came to pass or why the officers took the actions they did. Because the statements were not offered to establish the truth of the matter asserted, the Confrontation Clause does not apply.") (citation and punctuation omitted); *Jennings v. State*, 285 Ga. App. 774, 776 (1) (648 SE2d 105) (2007) (physical precedent only).

of the residence.

It is correct that "even if the officers had probable cause to investigate a crime, the Fourth Amendment prohibited them from entering [a suspect's] home or its curtilage without a warrant absent consent or a showing of exigent circumstances."[12] In this case, as Orme pulled into the driveway of the residence, he observed several people standing toward the rear of the trailer, and he saw several more emerging from behind the home. Orme testified that he had reason to believe that someone at the residence was armed with a gun, and he approached the side of the trailer to make sure that the officers approaching the front door were safe and did not get shot. Under these facts, we conclude that exigent circumstances justified Orme's entry into the back yard.[13]

Alvarez also contends that the officers had "no probable cause as to [him specifically]." This argument is unpersuasive.

> An officer may be engaged in the lawful discharge of his official duties even if he does not have probable cause to arrest an individual. Thus, for example, an individual who obstructs an officer during the investigation of a crime may be guilty of obstruction notwithstanding the lack of probable cause to arrest that individual. Further, all law enforcement officers have the general duty to enforce the law and maintain the peace.[14]

As we already concluded, Orme's entry into the back yard was not illegal. Once he saw Alvarez, who was standing face-first against the outbuilding with his hands concealed in a baggy jacket, given Orme's concerns about a possible armed individual at the scene, the officer was authorized to instruct Alvarez to display his hands and to stop advancing toward him.[15] Alvarez's failure to comply and subsequent physical attack on the officers supported his obstruction convictions.[16]

3. Alvarez also argues that the trial court erred by failing to instruct the jury that an essential element of the charge of obstruc-

---

[12] *Kirsche v. State*, 271 Ga. App. 729, 731 (611 SE2d 64) (2005).

[13] See *Smith v. State*, 308 Ga. App. 280, 281 (707 SE2d 175) (2011); *Jackson v. State*, 280 Ga. App. 716, 719 (1) (634 SE2d 846) (2006); *Owens v. State*, 236 Ga. App. 534, 535-536 (512 SE2d 394) (1999). Compare *Kirsche*, 271 Ga. App. at 731-732 (reversing denial of motion to suppress because officers were not authorized to enter home's curtilage).

[14] (Punctuation and footnote omitted.) *West v. State*, 296 Ga. App. 58, 60-61 (2) (673 SE2d 558) (2009).

[15] See *Santos v. State*, 306 Ga. App. 772, 774-775 (1) (703 SE2d 140) (2010).

[16] See *White v. State*, 310 Ga. App. 386, 390 (2) (b) (714 SE2d 31) (2011); *Santos*, 306 Ga. App. at 776 (2); *Edwards v. State*, 253 Ga. App. 837, 840 (c) (560 SE2d 735) (2002).

tion is that the officer was lawfully discharging his official duties at the time of the obstructing behavior and instead improperly charged that the State was required to prove that the arrest for obstruction was lawful. In other words, he argues that "the jury was told that the officers only had to be lawfully performing their duties when they arrested [him] for obstruction, not that they had to be lawfully performing their duties before the acts of obstruction occurred."

> OCGA § 17-8-58 (a), enacted effective July 1, 2007, controls the preservation of objections to jury charges. Under this statute, a criminal defendant is required to inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate. Subsection (b) precludes appellate review where there is a failure to object in accordance with subsection (a), but this subsection also provides for review for plain error which affects substantial rights.[17]

Because Alvarez failed to object to the charges at trial on this basis, we will review his claim for "substantial error in the charge which was harmful as a matter of law."[18]

The trial court charged the jury as follows:

> A person commits the offense of obstruction of an officer when that person knowingly and willfully resists and opposes any law enforcement officer in the lawful discharge of that law enforcement officer's official duties by offering to do violence or doing violence to the person of the law enforcement officer.[19]

The trial court further instructed:

> The standard for determining the lawfulness of the arrest of the accused for the offense of obstruction of an officer and

---

[17] (Punctuation and footnotes omitted.) *Fairwell v. State*, 311 Ga. App. 834, 838 (2) (717 SE2d 332) (2011).

[18] (Punctuation omitted.) *Walker v. State*, 305 Ga. App. 607, 616 (7) (699 SE2d 902) (2010).

[19] This instruction closely tracks the language of both the Code section and the pattern jury charge. See OCGA § 16-10-24 (b) ("Whoever knowingly and willfully resists, obstructs, or opposes any law enforcement officer . . . in the lawful discharge of his official duties by offering or doing violence to the person of such officer or legally authorized person is guilty of a felony. . . ."); Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (4th ed.), § 2.44.10 ("A person commits the offense of obstruction of an officer when that person knowingly and wilfully resists, obstructs, or opposes any law enforcement officer . . . in the lawful discharge of official duties by offering to do or doing violence to the person of the officer or legally authorized person.").

thus whether a law enforcement officer was lawfully discharging his duties such that the conduct of the accused would constitute obstruction of a law enforcement officer is whether you, the jury, find evidence that a reasonable suspicion or an articulable suspicion existed to stop or detain the accused who is charged with obstruction of an officer.

The trial court further instructed the jury regarding the basis for a reasonable or articulable suspicion and investigative detentions, and charged that Alvarez had a legal right to resist the arrest for obstruction if the jury found that the State "failed to prove by evidence beyond a reasonable doubt that the law enforcement officers in this case were in the lawful discharge of their duties."

" 'It is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge contained error.' "[20] Viewing the charge as a whole, along with the pattern jury charges and the applicable Code section, we find no plain error.[21]

*Judgment affirmed. Miller, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 15, 2011.

*Kristin I. Patten*, for appellant.
*Lee Darragh, District Attorney, Kathleen J. Devine, Assistant District Attorney*, for appellee.

---

[20] *Ow v. State*, 255 Ga. App. 98, 103 (2) (564 SE2d 512) (2002).
[21] See *Edwards v. State*, 308 Ga. App. 569, 571-572 (2) (707 SE2d 917) (2011); *Curtis v. State*, 285 Ga. App. 298, 300-301 (1) (a) (645 SE2d 705) (2007).