**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 2, 2015**

# In the Court of Appeals of Georgia

A15A1388. MYERS v. THE STATE.

DILLARD, Judge.

Following a stipulated bench trial, Shameka Shontay Myers was convicted of possessing less than one ounce of marijuana. Myers appeals this conviction, solely contending that the trial court erred in denying her motion to suppress evidence discovered after law enforcement illegally seized a passenger in her vehicle and, thus, illegally seized her as well. For the reasons set forth *infra*, we affirm.

At the outset, we note that the Supreme Court of Georgia has reiterated three fundamental principles to follow in reviewing a ruling on a motion to suppress. First, the trial court sits as the trier of fact at a hearing on a motion to suppress,[1] and

---

[1] *Brown v. State*, 293 Ga. 787, 803 (3) (b) (2) (750 SE2d 148) (2013); *Miller v. State*, 288 Ga. 286, 286 (1) (702 SE2d 888) (2010).

because it hears the evidence, the court's "findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]."[2] Second, the trial court's decision with regard to questions of fact and credibility must be accepted "unless clearly erroneous."[3] Finally, we, as the reviewing court, must construe the evidence "most favorably to the upholding of the trial court's findings and judgment."[4]

So viewed, the record reflects that at 3:30 a.m. on the day in question, an officer responded to a noise complaint in a Henry County neighborhood and, while investigating same, made a mental note of a vehicle parked in front of a house that had no cars in the driveway. The officer also observed that this vehicle contained two occupants and its windows were fogged.

After concluding his investigation into the noise complaint, the officer again passed by the vehicle and decided to make contact. The officer parked nearby and

---

[2] *Miller*, 288 Ga. at 286 (1) (punctuation omitted); *accord Brown*, 293 Ga. at 803 (3) (b) (2).

[3] *Miller*, 288 Ga. at 286 (1) (punctuation omitted); *accord Brown*, 293 Ga. at 803 (3) (b) (2).

[4] *Miller*, 288 Ga. at 286 (1) (punctuation omitted); *accord Brown*, 293 Ga. at 803 (3) (b) (2).

approached the vehicle on foot, noticing that the windows were still foggy. He also detected the odor of marijuana and saw that the passenger was beginning to exit the vehicle. The officer instructed the passenger to sit back down in the vehicle, which the passenger did.

The officer then made contact with the driver, Myers, at her window and detected an even more overwhelming odor of marijuana when she rolled down the window. He also observed a hollowed out tobacco wrapper on the ground outside of the driver's door. And when he confronted the occupants about the odor, they denied having marijuana. Thereafter, the officer asked Myers and the passenger to exit the vehicle separately, conducted a pat down of the passenger, and located marijuana and drug paraphernalia on the passenger. He then conducted a pat down of Myers and, although he did not find anything on her, he did discover marijuana in a container on her side of the vehicle during a subsequent search.

Following her charge for possession of marijuana, Myers filed a motion to suppress the evidence, arguing that *she* was illegally detained after the officer illegally detained the *passenger* by ordering the passenger back into the vehicle without reasonable articulable suspicion of criminal activity. And after a hearing on the matter, the trial court denied Myers's motion, finding that the officer had

reasonable articulable suspicion after he detected the odor of marijuana upon approaching the vehicle. Following her conviction in a stipulated bench trial, this appeal by Myers follows.

As we have previously explained, the Supreme Court of the United States has sculpted out, at least theoretically, three tiers of police-citizen encounters:

> (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause.[5]

In the first tier, police officers may "approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave."[6] And here, the trial court correctly determined that the officer's initial approach to the vehicle fell under the first

---

[5] *Brown v. State*, 301 Ga. App. 82, 84 (686 SE2d 793) (2009) (punctuation omitted); *accord Santos v. State*, 306 Ga. App. 772, 773-74 (1) (703 SE2d 140) (2010).

[6] *Brown*, 301 Ga. App. at 84 (punctuation omitted); *accord Santos*, 306 Ga. App. at 773-74 (1).

4

category of such encounters.[7] Furthermore, whether or not the officer's order that the passenger return to the vehicle escalated the situation to a second-tier encounter as the trial court determined,[8] the officer at that point unquestionably had reasonable articulable suspicion to briefly detain both Myers and the passenger.

---

[7] *See, e.g.*, *Whitmore v. State*, 289 Ga. App. 107, 109 (657 SE2d 1) (2008) (noting that officer's approach to make inquiry of vehicles that were already stopped was a first-tier encounter); *Carrera v. State*, 261 Ga. App. 832, 834 (584 SE2d 2) (2003) ("It is well established that an officer's approach to a stopped vehicle and inquiry into the situation are not a 'stop' or 'seizure' but rather clearly fall within the realm of the first type of police-citizen encounter." (punctuation omitted)).

[8] *See Santos*, 306 Ga. App. at 774 ("Examples of circumstances that might indicate a second-tier detention include . . . the use of language or tone of voice indicating compliance with the officer's request might be compelled." (punctuation omitted)); *Akins v. State*, 266 Ga. App. 214, 216 (1) (596 SE2d 719) (2004) ("[P]olice officers may approach a citizen, ask for identification, ask him to roll down a window or step out of a car, and freely question him without any articulable suspicion, as long as the officers do not detain the citizen or create the impression that the citizen may not leave."); *Johnson v. State*, 231 Ga. App. 273, 273 (498 SE2d 359) (1998) (physical precedent only) ("Defendant's response to the request for identification was 'do I have to.' In responding affirmatively, the deputy seized the person of defendant."). *Cf. Whitmore*, 289 Ga. App. at 110 (holding that encounter was still within the first tier when, after making inquiry of vehicles stopped on the side of the road, officer "*requested* that [the drivers] move their vehicles to a parking lot . . . so as to avoid impeding traffic and to ensure greater safety" (emphasis supplied)); *Stokes v. State*, 238 Ga. App. 230, 232 (518 SE2d 447) (1999) ("*Asking* an individual to step outside for safety reasons is a permissible action that does not rise to the level of a seizure. This court has also recognized that distinction between and officer's 'appropriately deferential' request for cooperation and a demand rising to the level of a stop." (citations omitted) (emphasis supplied)).

Articulable suspicion, of course, requires a "particularized and objective basis for suspecting that a citizen is involved in criminal activity."[9] This suspicion need not meet the higher standard of probable cause, but it must be more than a mere caprice or a hunch.[10] Thus, in assessing whether a reasonable articulable suspicion exists, we are charged with looking to "the totality of the circumstances."[11] And in this case, the officer observed a vehicle with two occupants parked in a residential area at 3:30 a.m., its windows obscured by fog. Then, as the officer approached the vehicle to make inquiry of the occupants, he detected the odor of marijuana. Indeed, the officer testified that he first detected the odor as he approached the vehicle, which was simultaneous with the passenger's attempt to exit the vehicle, and that the odor was why he "would have her stay." The detection of the odor of marijuana provided the officer with reasonable articulable suspicion to briefly detain both Myers and the

---

[9] *State v. Whitt*, 277 Ga. App. 49, 50 (625 SE2d 418) (2005) (punctuation omitted); *accord Padron v. State*, 254 Ga. App. 265, 268 (1) (562 SE2d 244) (2002).

[10] *Whitt*, 277 Ga. App. at 50; *Padron*, 254 Ga. App. at 268 (1).

[11] *Holmes v. State*, 293 Ga. 229, 230 (2) (744 SE2d 701) (2013); *State v. Thompson*, 256 Ga. App. 188, 189 (569 SE2d 254) (2002).

passenger to conduct an investigation into the matter.[12] As a result, the trial court properly denied Myers's motion to suppress.

*Judgment affirmed. Ellington, P. J., and McFadden, J., concur.*

---

[12] *See, e.g.*, *Bailey v. State*, 283 Ga. App. 365, 368 (2) (641 SE2d 548) (2006) (holding that trial court "could have concluded that [the officer] smelled marijuana smoke rather than unburned marijuana in [the defendant's] vehicle, which gave him a reasonable articulable suspicion of criminal activity"); *Tomlin v. State*, 242 Ga. App. 405, 406 (530 SE2d 27) (2000) ("The odor of marijuana emanating from a car provides a reasonable suspicion that marijuana is present in the car.").